Beaver Valley Canning Company v. Commissioner.
Beaver Valley Canning Co. v. Commissioner
Docket No. 22086.
United States Tax Court
1950 Tax Ct. Memo LEXIS 13; 9 T.C.M. (CCH) 1120; T.C.M. (RIA) 50312; December 13, 1950
*13 Where petitioner was under no legal obligation, either by the statute authorizing incorporation, [by] its articles of incorporation, [by] its bylaws, or [by] any other contract, to distribute, as "patronage dividends," "patronage refunds," or "repayments," amounts received in excess of its costs to its shareholder-customers, held, petitioner is not an association entitled to deduct or exclude from its gross income the amounts actually distributed during the taxable years James M. Stewart, Esq., 203 Hubbell Bldg., Des Moines, Ia., and Rolland E. Grefe, Esq., for the petitioner. Gene W. Reardon, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion This cause involves income, declared value excess-profits and excess profits taxes for the fiscal year ending April 30, 1944, and *14 income tax for the fiscal years ending April 30, 1945 and 1947, as follows: 1944
1945
1947
Income tax
$ 4,205.63
$3,347.14
$17,765.68
Excess profits
tax
16,572.24
Declared value
excess-profits
tax
796.73
Petitioner claims an overpayment and overassessment of $2,221.38 in excess profits taxes for the fiscal year ending April 30, 1944, and of $1,494.59 in income taxes for the fiscal year ending April 30, 1947. The sole issue raised is whether "patronage dividends," "patronage refunds," or "repayments" distributed by petitioner to its stockholder-customers were includible in its gross income. Some of the facts were stipulated. Findings of Fact The stipulated facts are so found and are incorporated herein. Petitioner was incorporated March 1, 1937, under Chapter 384 of the 1935 Iowa Code entitled "Corporations for Pecuniary Profit," to conduct and carry on a canning business and any business incidental thereto. Its books of account are maintained and its tax returns are filed on an accrual basis. Federal tax returns for the fiscal years ending April 30, 1944, 1945 and 1947, were filed by petitioner with the collector of internal revenue *15 for the district of Iowa, Des Moines, Iowa. The stockholders of petitioner are wholesale cooperative grocery companies who are members of the National Retailer Owned Grocers, known as N.R.O.G. The organizers were also members of N.R.O.G. The Articles of Incorporation of the petitioner provided for an authorized capital stock of $100,000 consisting of 1,000 shares with a six per cent cumulative dividend. This was amended September 16, 1944, by striking out all of Article IV (which contained all provisions regarding stock issuance, dividends, redemption, etc.) and authorizing capital stock of $200,000 divided into 2,000 shares of $100 par value. The amendment was silent as to dividends, redemptions, and other provisions contained in the original Article IV. At a Board of Directors meeting on June 7, 1941, a three per cent discount plan based on gross sales was authorized as of July 15, 1941. This was ratified at a stockholder's meeting on June 5, 1942, and a resolution was passed to continue this discount plan for the "current year," i.e., the year ending April 30, 1943. By action of the Board of Directors on August 28, 1943, this was continued for the fiscal year 1943-1944. Another *16 resolution passed at this same meeting allowed sales to non-shareholder-customers, and a distinction was made between customers who owned petitioner's stock and those who did not. Only the former were to be entitled to such "patronage refunds" as the Board of Directors should decide upon from time to time. After an audit report determining the petitioner's earnings for the fiscal year ending April 30, 1944, the Board of Directors at a meeting on June 10, 1944, declared a "patronage refund" of 15 per cent, based on gross sales, to each shareholder-customer for the year. The sum of $27,396.78 was paid on June 22, 1944. After a similar meeting on May 5, 1945, a 4 1/2 per cent "patronage refund," based on gross sales to shareholder-customers, was declared for the fiscal year ending April 30, 1945, involving a total sum of $12,179.30. Following a preliminary audit for the year ending April 30, 1947, at a meeting of the Board of Directors on April 22, 1947, a resolution was passed to "repay" 12 1/2 per cent of the gross sales. The total sum paid was $89,796.16. The Commissioner disallowed deductions of these amounts for the years ending April 30, 1944 and 1945, and disallowed exclusion of *17 the amount from the gross sales for the year ending April 30, 1947. Petitioner reported taxable income as: $15,450.32 for the year ending April 30, 1944; $37,819.77 for the year ending April 30, 1945; and $6,932.99 for the year ending April 30, 1947. There is no provision in the statute under which petitioner incorporated, in its articles of incorporation, or in its bylaws providing for the declaration or payment of patronage dividends, for the years herein involved. Petitioner's officers had informed shareholder-customers that there would be patronage refunds and this was one of the reasons purchases were made. However, the amount of such refunds was indefinite. Opinion RICE, Judge: The sole issue in this case is whether certain "patronage dividends," "patronage refunds," and "repayments" made by petitioner to its stockholder-customers were includible in petitioner's gross income and taxable to it; or whether such "dividends," "refunds," and "repayments" were the property of the stockholder-customers and not the property of the petitioner. Petitioner is an ordinary stock corporation organized for pecuniary profit under Iowa law. Neither by the Iowa statute under which it *18 was organized, its articles of incorporation, nor its bylaws, was petitioner under a legal obligation to pay patronage dividends to any of its customers. At a meeting on August 28, 1943, the Board of Directors passed a resolution providing that shareholder-customers "* * * shall be entitled to such patronage dividends as the Board of Directors of Beaver Valley Canning Company decide upon, from time to time." After corporate earnings were known for the fiscal years ending April 30, 1944, 1945 and 1947, at meetings of the Board, patronage dividends to the shareholder-customers were declared from the earnings of such year. Petitioner claimed deductions for such amounts in its tax returns for the years ending April 30, 1944 and 1945, and excluded from its gross sales for the year ending April 30, 1947 the amount so paid. The Commissioner determined that such deductions and exclusions were not allowable for Federal taxation purposes. There is no express authorization in the Internal Revenue Code for deductions or exclusions of patronage dividends from gross income. Under long established practice, however, true patronage dividends have been excluded on the theory that the dividends are *19 rebates of money belonging to the patrons rather than income to the association. ; ; . This has been recognized by the Treasury Department in rulings and by decisions of various courts. While petitioner organized under the general incorporation laws rather than under the statutes for cooperative associations, and offered no explanation therefor, such action is not controlling if petitioner actually organized and operates as a true cooperative. aff'd . An essential condition for such an exclusion is a pre-existing legal obligation to allocate a patronage dividend in the amount that was allocated or distributed. . Such a legal obligation may arise from the statute authorizing incorporation, the corporate charter or bylaws, or some other contract, but it cannot rest upon some corporate action taken after receipt of the money, such as action of the corporate directors *20 or officers. ; ; , aff'd ; . While admitting that neither the statute, its charter, nor bylaws obligate it to pay the patronage dividends, petitioner argues that due to the representations which it made its shareholder-customers that there would be patronage dividends, and their reliance on such representations when purchasing, that it was bound to pay such refunds on the ground of promissory estoppel, and, therefore, that a binding legal obligation existed for such payments. Petitioner also argues had it not declared the patronage dividends it would have been subject to suit, but cites no cases where in a situation such as this, such a suit was allowed or successful. Nor have we found any case exactly in point. In , aff'd , plaintiff was allowed an accounting where he sold milk to *21 the defendant corporation under a contract which provided he would receive a proportionate share of profits after amounts were set aside for dividends, reserves, supplemental expenses, etc. His sole contention was that profits were incorrectly computed, resulting in his receiving too little. In , the taxpayer was a sales organization buying products from its shareholder-vendors. At the close of each year the taxpayer's directors would determine the amount of profits which could be distributed and the distribution was made on the basis of the amount purchased from each member. While neither the articles of incorporation nor the bylaws required the profit to be distributed, there was evidence of an "understanding" that it would be done. An amendment to the bylaws had been suggested but never passed. We held that this "understanding" was not a contract, and since the petitioner was under no obligation to make any distribution until the Board of Directors had acted, the amounts paid were taxable income to the taxpayer. For the year there in question, about $7,000 was distributed, while over $13,000 was reported as taxable income. *22 The evidence did not show that this latter amount was set up as a reserve or held back for any like reason. We felt it could be used for dividends or anything else, and that for such reason there was no legal obligation compelling distribution of a definite amount or percentage. On appeal, our decision was affirmed. In , the taxpayer was held taxable on the patronage dividends where the statute under which it organized provided that part or all the profits could be distributed. Since the receipts could be used for a number of things and only a portion was required to be distributed, it was held that the directors had a discretion which negated any existing obligation. Similarly, in the case at bar, there was no showing of any definite and certain amount or percentage which would enable a court to find a valid contract even though there was a "representation." To have a valid contract, there must be certainty. A promise may attempt to define a price but may do so too indefinitely for enforcement. Williston on Contracts, § 41. As in , petitioner here reported *23 taxable income for the years in controversy and no evidence as to what this was kept for was offered. It could have been used in a number of ways. Therefore, we hold, that since the Board of Directors was under no legal obligation to declare and make such a distribution to its shareholder-customers, respondent's determination is sustained. Decision will be entered for the respondent.